IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KATHRYN L. RUTENSCHROER, | ) | CIV. NO. 05-00364 ACK/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STARR SEIGLE COMMUNICATIONS, | ) | |
| Incorporated dba QMARK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

Kathryn L. Rutenschroer ("Plaintiff"), proceeding pro se, alleged in her original Complaint that she suffered employment discrimination as an employee of Starr Seigle Communications, Inc. dba QMark (hereafter "Starr Seigle" or "Defendant") in violation of Title VII of the Civil Rights Act of 1964 based on her race, religion, gender, disability, sexual orientation, and marital status. Specifically, she pled that she was subjected to disparate treatment in that Defendant unlawfully failed to promote her and terminated her.

On February 6, 2006, Defendant filed a Motion for Partial Dismissal and Partial Judgment on the Pleadings and a Motion for Summary Judgment. Defendant also filed a Concise

1

Statement of Facts in Support of its Motion for Summary Judgment ("Motion for Summary Judgment CSF").  On February 15, 2006, Defendant filed a First Amended Declaration of Barbara Ankersmit, the President of QMark Research and Polling, a division of Starr Seigle, along with eight exhibits.

On May 15, 2006, Plaintiff submitted an Answer/Reply to Defendant's Motion for Summary Judgment and Partial Judgment on the Pleadings ("Opposition").  Attached to the Opposition are Plaintiff's Affidavit regarding her employment experience ("Affidavit 1"), Plaintiff's Affidavit regarding administrative procedures ("Affidavit 2"), and nineteen exhibits.

On May 31, 2006, the Court issued an Order granting in part and denying in part Defendant's Motion for Partial Dismissal and postponing its ruling on Defendant's Motion for Partial Judgment on the Pleadings and Motion for Summary Judgment ("May 31 Order").[1]  The Court concluded that Plaintiff failed to exhaust her administrative remedies regarding the failure to promote claim and religious discrimination claim. (May 31 Order at 19-21).  Accordingly, the Court dismissed those claims. However, the Court granted Plaintiff leave to file an Amended Complaint, Supplemental Opposition, and Concise Statement of Facts before ruling on Defendant's remaining motions.

---

[1]  The Court incorporates the factual and procedural history from its May 31, 2006 Order by reference.

On June 21, 2006, Plaintiff filed an Amended Complaint, Supplemental Opposition to Defendant's Motion(s) for Summary Judgment ("Supplemental Opposition"), and Concise Statement of Facts in Support of Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Supplemental Opposition CSF"). Plaintiff's Supplemental Opposition CSF does not expressly accept or reject Defendant's Motion for Summary Judgment CSF as required by Local Rule 56.1.  The Supplemental Opposition contains an Amendment to Affidavit of Kathryn Rutenschroer regarding her employment experience ("Affidavit 3").  (<u>See</u> Supplemental Opposition, Ex. 3).  Defendant filed a Reply to Plaintiff's Supplemental Opposition on June 22, 2006 ("Additional Reply"). The parties appeared before the Court for a hearing on Defendant's remaining motions on June 26, 2006.

**STANDARD**

**I.   Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") states, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  If procedural defects are asserted in a Rule 12(c) motion, the district court will apply the same standards for granting the appropriate relief or denying the motion as it would have employed had the motion been brought prior to the defendant's answer under Rules 12(b)(1), 12(b)(6), 12(b)(7), or

3

12(f).  <u>See</u> 5C Charles Alan Wright & Arthur R. Miller, Federal
Practice and Procedure § 1367 (3d ed. 2004).  Thus, "if a party
raises an issue as to the court's subject matter jurisdiction on
a motion for a judgment on the pleadings, the district judge will
treat the motion as if it had been brought under Rule 12(b)(1)."
<u>Id.</u>; <u>see also</u> <u>Collins v. Bolton</u>, 287 F. Supp. 393, 396 (N.D. Ill.
1968) ("Since defendant alleges only jurisdictional grounds for
dismissal, the proper course is to consider the motion [for
judgment on the pleadings] as one to dismiss for lack of subject
matter jurisdiction."); <u>Engleson v. Burlington Northern Railroad
Co.</u>, 1988 WL 332944 *2 n.1 (D. Mont. 1988) ("Because the motion
[for judgment on the pleadings] raises only subject matter
jurisdictional issues, the court treats the motion as one
requesting dismissal for lack of subject matter jurisdiction").

When Rule 12(c) is used to raise the defense of failure
to state a claim upon which relief can be granted, the standard
governing the Rule 12(c) motion for judgment on the pleadings is
the same as that governing a Rule 12(b)(6) motion.  <u>See</u> <u>McGlinchy
v. Shell Chemical Co.</u>, 845 F.2d 802, 810 (9th Cir. 1988); <u>Luzon
v. Atlas Ins. Agency, Inc.</u>, 284 F. Supp. 2d 1261, 1262 (D. Haw.
2003).  As a result, a motion for judgment on the pleadings for
failure to state a claim may be granted "'only if it is clear
that no relief could be granted under any set of facts that could
be proven consistent with the allegations.'"  <u>McGlinchy</u>, 845 F.2d

4

at 810 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73
(1984)).  Thus, "[a] judgment on the pleadings is properly
granted when, taking all allegations in the pleading as true, the
moving party is entitled to judgment as a matter of law."  Enron
Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 528
(9th Cir. 1997) (citing McGann v. Ernst & Young, 102 F.3d 390,
392 (9th Cir. 1996)).  "Not only must the court accept all
material allegations in the complaint as true, but the complaint
must be construed, and all doubts resolved, in the light most
favorable to the plaintiff."  McGlinchy, 845 F.2d at 810.

## II.  Motion for Summary Judgment

The purpose of summary judgment is to identify and
dispose of factually unsupported claims and defenses.  See
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary
judgment is therefore appropriate when the "pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue of material fact and that the moving party is
entitled to judgment as a matter of law."[2]  Fed. R. Civ. P.
56(c).

---

[2] Affidavits made on personal knowledge and setting forth
facts as would be admissible at trial are evidence that a court
may consider when determining whether a material issue of fact
exists.  Fed. R. Civ. P. 56(e).  Legal memoranda and oral
argument are not evidence and do not create issues of fact.  See
British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir.
1978).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[3]  <u>Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n</u>, 310 F.3d 1188, 1194 (9th Cir. 2002) (quoting <u>Union Sch. Dist. v. Smith</u>, 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal citations omitted).  Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.  The moving party may do so with affirmative evidence or by "'showing'--that is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."  <u>Id.</u> at 325.  All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party.  <u>See, e.g.</u>, <u>T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).  So, too, the court's role is not to make credibility

---

[3] Disputes as to immaterial issues of fact do "not preclude summary judgment."  <u>Lynn v. Sheet Metal Workers' Int'l Ass'n</u>, 804 F.2d 1472, 1478 (9th Cir. 1986).

assessments.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.  <u>Id.</u> at 250-51.

Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  <u>See</u> <u>Celotex</u>, 477 U.S. 322-23; <u>Matsushita Elec.</u>, 475 U.S. at 586; <u>Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987).  Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002); <u>see</u> <u>also</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  The nonmoving party must instead set forth "significant probative evidence" in support.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.[4]  <u>See</u> <u>Celotex</u>, 477 U.S. at 322.

_____

[4] When the moving party also has the burden of proof in an element of a claim, it has the "burden of establishing a prima facie case on the motion for summary judgment."  <u>UA Local 343 of the United Ass'n of Journeymen v. Nor-Cal Plumbing, Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1995).  Upon showing a prima facie case, the burden of production shifts and it becomes "incumbent on [the

**(Cont.)**

## III. __Special Considerations Regarding a Pro Se Litigant__

When a plaintiff proceeds pro se, the pleadings must be read more liberally than pleadings drafted by counsel. __Haines v. Kerner__, 404 U.S. 519, 520-21 (1972); __Eldridge v. Block__, 832 F.2d 1132, 1137 (9th Cir. 1987). However, "a pro se litigant is not excused from knowing the most basic pleading requirements." __American Ass'n of Naturopathic Physicians v. Hayhurst__, 227 F.3d 1104, 1107-08 (9th Cir. 2000) (citations omitted). Before a district court may dismiss a pro se complaint, the court must provide the pro se litigant with notice of the deficiencies of the complaint and an opportunity to amend the complaint, if the deficiencies can be cured, prior to dismissal. __See__ __Ferdik v. Bonzelet__, 963 F.2d 1258, 1261 (9th Cir. 1992); __Eldridge__, 832 F.2d at 1136.

### __DISCUSSION__

Plaintiff's Amended Complaint narrows her allegations to claim she was subjected to disparate treatment when she was unlawfully terminated based on her race, color, and gender. (Amended Complaint ¶ 5). Her claims are brought pursuant to

---

nonmoving party] to 'set forth specific facts showing that there is a genuine issue for trial,' by evidence cognizable under that rule." __Id.__ (quoting Fed. R. Civ. P. 56(e)); Charles Alan Wright __et al.__, Federal Practice & Procedure § 2727 (3d ed. 1998). The ultimate burden of persuasion as to the non-existence of any genuine issues of material fact remains on the moving party. __Nissan Fire & Marine Ins. Co. v. Fritz Cos.__, 210 F.3d 1099, 1102 (9th Cir. 2000); __accord__ __Dye v. United States__, 121 F.3d 1399, 1409 (10th Cir. 1997).

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42
U.S.C. § 2000e-2 (2005), and the Civil Rights Act of 1866, 42
U.S.C. § 1981.[5]  Title VII makes it illegal for an employer to
discriminate against an employee "because of such individual's
race, color, religion, sex, or national origin."  42 U.S.C.
2000e-2(a).  Plaintiff no longer alleges discrimination based on
marital status, sexual orientation, or disability in her Amended
Complaint.

## I.   Motion for Partial Judgment on the Pleadings

As Plaintiff no longer asserts that she was
discriminated against based on marital status or sexual
orientation, the Court grants Defendant's motion regarding these

---

[5]  Section 1 of the Civil Rights Act of 1866 is enacted by
42 U.S.C. § 1981(a), which states:

> All persons within the jurisdiction of the United
> States shall have the same right in every State and
> Territory to make and enforce contracts, to sue, be
> parties, give evidence, and to the full and equal
> benefit of all laws and proceedings for the security of
> persons and property as is enjoyed by white citizens,
> and shall be subject to like punishment, pains,
> penalties, taxes, licenses, and exactions of every
> kind, and to no other.

Courts have recognized a private cause of action for employment
discrimination under Section 1981 and have applied the same
substantive standards as for Title VII.  Cornwell v. Electra
Cent. Credit Union, 439 F.3d 1018, 1028 n.5 (9th Cir. 2006) ("The
McDonnell Douglas framework is also applicable to employment
discrimination claims under 42 U.S.C. § 1981."); 21 Am. Jur.
Trials 1 § 3 n. 48 (citing Young v. International Tel. & Tel.
Co., 438 F.2d 757 (3rd Cir. 1971); Waters v. Wisconsin Steel
Works of International Harvester Co., 427 F.2d 476 (7th Cir.
1970), cert. denied 400 U.S. 911, 91 S.Ct. 137 (1970)).

claims.  In the May 31 Order, the Court instructed Plaintiff to name a state and/or federal law basis for her claims of marital status and sexual orientation discrimination.  (May 31 Order at 22-26).  As the Court noted, Title VII does not provide protection for an individual based on her sexual orientation or marital status.

After thoroughly reviewing Plaintiff's June 21, 2006 filings, the Court finds that Plaintiff offers no legal or factual basis for claims of employment discrimination due to Plaintiff's sexual orientation or marital status under Hawaii law or federal law.  Accordingly, the Court GRANTS Defendant's Motion for Partial Judgment on the Pleadings on these claims pursuant to Rule 12(c).

## II.  Motion for Summary Judgment

Defendant moves for summary judgment on Plaintiff's remaining claims arguing that Plaintiff cannot establish a prima facie case of race, color, gender, or disability discrimination. Under Title VII, it is illegal for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . ."  42 U.S.C. § 2000e-2(a)(1).  The Americans with Disabilities Act ("ADA") makes it unlawful for an employer to discriminate against an individual

because of her disability.  42 U.S.C. § 12112(a) (2006).  The
Court now addresses Plaintiff's claims under these two statutes
in turn.

A.   Title VII Claims

        "A person suffers disparate treatment in his [or her]
employment when he or she is singled out and treated less
favorably than others similarly situated on account of" a
protected characteristic.  Cornwell, 439 F.3d at 1028 (citing
McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1121 (9th Cir. 2004)
(internal quotation marks omitted)).  To prevail in a disparate
treatment claim, a plaintiff must "prove that the employer acted
with conscious intent to discriminate."  Costa v. Desert Palace,
Inc., 299 F.3d 838, 854 (9th Cir. 2002) (citing McDonnell Douglas
Corp. v. Green, 411 U.S. 792, 805-06 (1973)).

        When a defendant moves for summary judgment, the
plaintiff alleging disparate treatment may respond in one of two
ways.  McGinest, 360 F.3d at 1122; Costa, 299 F.3d at 855.  On
one hand, a plaintiff may provide direct or circumstantial
evidence "that a discriminatory reason more likely motivated the
employer" to engage in disparate treatment.  McGinest, 360 F.3d
at 1122; Costa, 299 F.3d at 855.  In the alternative, the
plaintiff may survive summary judgement by engaging in the
McDonnell Douglas burden shifting analysis.  Cornwell, 439 F.3d
at 1028; McGinest, 360 F.3d at 1122.

As it is rare that direct evidence of discrimination exists, a plaintiff generally relies on circumstantial evidence to satisfy its burden whether engaging in the McDonnell Douglas analysis or not.  The Ninth Circuit has recently noted that there is a tension in its current jurisprudence as to the quality of circumstantial evidence required for plaintiffs to survive summary judgment in Title VII employment discrimination cases. Cornwell, 439 F.3d at 1030-31.  Generally, courts have required plaintiffs to provide "substantial" and "specific" circumstantial evidence.  Mondero v. Salt River Project, 400 F.3d 1207, 1213 (9th Cir. 2005); Bradley v. Harcourt, Brace and Co.,104 F.3d 267, 270 (9th Cir. 1996) (citing Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994)).  In light of the Supreme Court's opinion in Costa v. Desert Palace, 539 U.S. 90, 100, 123 S.Ct. 2148, 2154 (2003), which stated that circumstantial and direct evidence should be treated alike, the Ninth Circuit recognized that the "substantial" and "specific" requirements for circumstantial evidence may be diminished.  See Cornwell, 439 F.3d at 1031 (citing McGinest, 360 F.3d at 1122).  Such a finding would contradict the well-established Ninth Circuit precedent that requires a greater quality of evidence when relying solely on circumstantial evidence.  See Cornwell, 439 F.3d at 1030 n. 9 (citing Dominguez-Curry v. Nev Transp. Dep't, 424 F.3d 1027, 1038 (9th Cir. 2005); Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1095

12

(9th Cir. 2005); <u>Bodett v. CoxCom, Inc.</u>, 366 F.3d 736, 743 (9th
Cir.); <u>Stegall v. Citadel Broad. Co.</u>, 350 F.3d 1061, 1065-67 (9th
Cir. 2003)).

However, the Ninth Circuit specifically elected not to
overturn its precedent requiring "substantial" and "specific"
circumstantial evidence in <u>Cornwell</u> without the review of an en
banc panel. <u>Cornwell</u>, 439 F.3d at 1030-31. The court concluded
that it need not reach the issue because of its finding that the
plaintiff's evidence met both the diminished standard that may
follow <u>Costa</u> and the heightened "substantial" and "specific"
standard. <u>Id.</u> at 1031. Similarly, as will be discussed
throughout the Order, this Court need not reach a conclusion
about the required level of circumstantial evidence, as
Plaintiff's evidence is insufficient under either standard.

Plaintiff has not explicitly elected whether or not to
engage in the <u>McDonnell Douglas</u> burden shifting analysis.
Therefore, the Court will consider both of Plaintiff's possible
avenues to defeat summary judgment.

1. **<u>Plaintiff has not Provided Sufficient Direct or
   Circumstantial Evidence that a Discriminatory Reason
   Motivated her Alleged Termination</u>**

The evidence is insufficient to establish that a
discriminatory reason likely motivated Defendant's employment
practices. There is no direct evidence of race or sex
discrimination in this case. Plaintiff alleges that she

13

experienced hostile behavior at Starr Seigle.  However, there is no evidence that her treatment was based on her race or gender, and there is no connection between the following alleged incidents and her termination.

On her first day of work, a supervisor named Taryn Goto allegedly yelled at Plaintiff and gripped her shoulder with intense pressure.  (Opposition, Affidavit 1 at 3).  Plaintiff's supervisors indicated that she was speaking too loudly, but Plaintiff believes this was the first sign of discrimination.  In support of this accusation, she reports that a male co-worker spoke loudly on another occasion and was never reprimanded.  (Opposition, Affidavit 1 at 5).  Plaintiff states that she informed her supervisors that she felt discriminated against on that day.  (Opposition, Affidavit 2 at 1).  The next incident occurred on May 1, 2004, when Plaintiff was told to go home upon arrival because there were no computers available.  (Opposition, Affidavit 1 at 3-5).  However, when she protested, she was seated and put to work.

Plaintiff also reports that she informed another supervisor, Jo-Anne Nakasone, that she felt she was discriminated against on July 13, 2004 when she realized her fellow co-workers were assigned to work and she was not. (Opposition, Affidavit 2 at 2).  Plaintiff claims Nakasone told her that she was not assigned work because she was "not capable of calling

14

businesses." (Opposition, Affidavit 1 at 9).   It is unclear whether this statement refers to Plaintiff's qualifications or availability.   Nakasone attests that she simply told Plaintiff that the new projects did not match her schedule.   (Motion for Summary Judgment CSF, Nakasone Declaration ¶ 6).   Finally, Plaintiff claims that the president of her division, Barbara Ankersmit, treated her in a hostile and racist manner. (Supplemental Opposition CSF, Affidavit 3).   Plaintiff provides no specific details regarding this accusation.

After reviewing Plaintiff's evidence, the Court finds that she has only offered uncorroborated allegations and self-serving testimony in support of her claim that she was terminated for a discriminatory reason.   While Plaintiff states that she feels she was discriminated against, there is insufficient evidence that her treatment was related in any way to her gender or race.   Accordingly, finding insufficient direct or circumstantial evidence that a discriminatory reason motivated Plaintiff's alleged termination, the Court will now consider the McDonnell Douglas analysis.

 2. **McDonnell Douglas Burden Shifting Analysis**

First, a plaintiff must establish a prima facie case of discrimination.   McGinest, 360 F.3d at 1122; Burdine, 450 U.S. at 254.   "The burden of establishing a prima facie case of disparate treatment is not onerous."   Id. at 253.   By

establishing the prima facie case, the plaintiff creates a presumption of discrimination.

Then, the burden of production shifts to the defendant to rebut the claim by articulating a legitimate, non-discriminatory reason for its conduct. Cornwell, 439 F.3d at 1028; Raytheon Co. v. Hernandez, 540 U.S. 44, 50 n. 3 (2003). To satisfy its burden, the defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1196 (9th Cir. 2003) (quoting Burdine, 450 U.S. at 257)). If the defendant produces a non-discriminatory explanation, then the presumption of discrimination is dropped and the plaintiff must satisfy the original burden of persuasion. Costa, 299 F.3d at 855; Burdine, 450 U.S. at 255.

At the third stage of the analysis, a plaintiff can satisfy her burden by showing "that a discriminatory reason more likely motivated the employer" to engage in disparate treatment.[6] Cornwell, 439 F.3d at 1028 (citing Burdine, 450 U.S. at 256). Or, the plaintiff can offer evidence that the "employer's

---

[6] This is the same showing that a plaintiff may make at the outset, in the alternative to engaging in the McDonnell Douglas burden shifting analysis. A plaintiff has the choice to attempt to prove discriminatory motivation at either stage of the analysis.

proffered explanation is unworthy of credence." <u>Burdine</u>, 450 U.S. at 256 (<u>citing</u> <u>McDonnell Douglas</u>, 411 U.S. at 804-05).  If the plaintiff is successful in either case, or genuine issues of material fact remain, then the defendant's motion for summary judgment is denied.

     a.   <u>Prima Facie Case</u>

     As stated, under the <u>McDonnell Douglas</u> burden shifting framework, Plaintiff must first establish a prima facie case of disparate treatment.  The four required elements of a successful disparate treatment claim are (1) plaintiff belongs to a protected class; (2) plaintiff was qualified for the position; (3) plaintiff was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably.  <u>Chuang v. University of California Davis, Bd. of Trustees</u>, 225 F.3d 1115, 1123 (9th Cir. 2000); <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 n. 6 (1981).  "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." <u>Cordova v. State Farm Ins. Cos.</u>, 124 F.3d 1145, 1148 (9th Cir. 1997) (quoting <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 889 (9th Cir. 1994)).

     i.  **<u>Plaintiff is a Member of a Protected Class</u>**

     Plaintiff states that she is a black, African-American

woman, which qualifies her as a member of protected race, color, and gender classes.  Defendant does not contest that Plaintiff meets the first element of the prima facie case of race, color, and sex discrimination.

>       ii.  **Plaintiff was Qualified for the Job**

Defendant argues that Plaintiff was not qualified for certain assignments in June 2004 and July 2004 because she was only available to work on a limited basis.  (Motion for Summary Judgment at 22-3).  Plaintiff also claims that her supervisor, Jo-Ann Nakasone told her on July 13, 2004 that other callers were working "because [Starr] needed people who were capable of calling businesses."  (Opposition, Affidavit 1 at 9).  According to Nakasone's affidavit, she informed Plaintiff that "the next available project probably required evening work . . . and she would be called when these future projects started to see if she was available to work on them."  (Motion for Summary Judgment CSF, Nakasone Declaration ¶ 6).

For the second element of the prima facie case, Plaintiff only need prove that she was qualified to perform the duties of a telephone interviewer, not that she was available to work certain hours.  Plaintiff declares that she had a high success ratio in performing interviews.  (Opposition, Affidavit 1 at 6).  While Plaintiff's own statement that she was performing adequately is not dispositive, Defendant offers no evidence to

the contrary.  See Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 660 (9th Cir. 2002).

Plaintiff also presents Interviewer Productivity records from her employment with Starr Seigle.  (Supplemental Opposition CSF, Ex. 4).  The records span from April 27, 2004 through June 2, 2004.  Plaintiff generally worked a half day on Monday, Wednesday, and Friday throughout the period, and a full day on Saturday in accordance with her schedule.  Id.  The records reveal that Plaintiff's Log On percentage, Dialings per Log On, Completes per Log On Hour, and Average Completed Interview Length were all comparable to her fellow employees. Id.

Furthermore, Defendant claims that it called Plaintiff repeatedly over the next four months in an attempt to assign her to work.  Presumably, an employer would not exert such an effort to assign work to an on-call, part-time employee that was not qualified to do the job.  While the parties continue to dispute whether Plaintiff was available to work on certain projects, there is no doubt that she was qualified to work as a telephone interviewer at Starr Seigle.  The Court concludes that Plaintiff has satisfied the second element of the prima facie case of her Title VII discrimination claim.

### iii. **There are Genuine Issues of Material Fact as to Whether Plaintiff Suffered an Adverse Employment Action**

To satisfy the third element of a Title VII discrimination claim, Plaintiff must show that she suffered an adverse employment action.  Plaintiff states that she was frequently disturbed and dissatisfied by the conditions at the workplace and conduct of Defendant's employees.  However, her cause of action is primarily based upon Defendant's alleged failure to schedule her for work after June 5, 2004 and her subsequent termination.  The Ninth Circuit broadly defines the boundaries of what constitutes an adverse employment action.  Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  Suspension, demotion, transfer, and issuance of undeserved performance ratings are just a few of the activities that may constitute an adverse employment action.  Id. at 1241-42.  Even under the most restrictive tests, termination is clearly an adverse employment action.  Id. at 1242.  The Court concludes that a failure to assign an employee to work and termination are adverse employment actions.

Plaintiff asserts that she arrived at work on June 5, 2004, as scheduled, and was told to go home because her project had been completed.  She was given no indication as to when she would be assigned to work again, and her supervisor, Taryn Goto, instructed her to call at a later date to determine when she was

scheduled to return.  Plaintiff claims that she returned to Starr
Seigle's office on two additional occasions to inquire about
assignments, and called numerous times without ever being offered
work.  (Opposition, Affidavit 1 at 5-6).  Plaintiff states that
she received "no phone calls from Starr Seigle management or
staff regarding work assignments, future employment, nor my
charge of discrimination."  (Opposition at 3).

Defendant denies that it improperly failed to assign
Plaintiff to work and contests that she was ever terminated.
First, Defendant claims that Plaintiff was assigned to a project
that ended on June 2, 2004.  (Motion for Summary Judgment CSF ¶
11).  At that time, Plaintiff only agreed to work from 1 p.m. to
5 p.m. on Mondays, Wednesdays, and Fridays, and from 9 a.m. to 5
p.m. on Saturdays.  (Motion for Summary Judgment CSF ¶ 8).
Defendant claims that the six active projects for June 2004 and
July 2004 required callers who worked full-time weekday shifts,
or nighttime and weekend shifts.  (Motion for Summary Judgment
CSF ¶ 12).  As Plaintiff's schedule did not match the available
assignments, she was not offered a position on the teams that
staffed those projects.  (Motion for Summary Judgment CSF ¶ 13).

Moreover, Defendant alleges that either Barbara
Ankersmit, the President of QMark, or Gina Gipaya-Gima, Project
Director, called Plaintiff on four separate occasions to check on
her schedule and discuss assignments.  (Motion for Summary

Judgment CSF ¶¶ 17, 18).  According to Defendant, Plaintiff never returned these calls.  <u>Id.</u>

Finally, Defendant states that it did not terminate Plaintiff, and it was Plaintiff that ended their relationship when she found a new place of employment on July 27, 2004. (Motion for Summary Judgment CSF ¶ 19).  Plaintiff admits that she accepted a new position at another telephone marketing agency, but only after Starr Seigle stopped assigning her to work. (Opposition at 3).

The Court concludes that genuine issues of material fact remain as to whether Defendant stopped assigning Plaintiff to work.  There are additional genuine issues of material fact regarding whether Defendant terminated Plaintiff.  As discussed in the next section, Plaintiff has clearly failed to meet her burden of establishing the fourth element of the prima face case. Therefore, the Court need not make a finding as to whether Plaintiff suffered an adverse employment action.

iv.  **<u>Plaintiff has not Provided Evidence that Similarly Situated Employees from Outside Her Protected Class Were Treated Differently</u>**

Finally, Plaintiff must show that similarly situated individuals outside of her protected class were treated more favorably than her.  "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct."  <u>Josephs v. Pacific Bell</u>, 432 F.3d 1006, 1017 (9th Cir. 2005) (quoting

22

<u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634, 641 (9th Cir. 2003)).  For the purpose of this analysis, Plaintiff must prove that employees with a similar work schedule that were not black, not African-American, or not female received better treatment.  See <u>Leong v. Potter</u>, 347 F.3d 1117, 1124 (9th Cir. 2003) (holding that a plaintiff could not prove discrimination by comparing himself to other employees that were not similarly situated).

       (a). <u>Race and Color</u>

       Plaintiff claims that her co-workers were primarily "non-black." (Opposition, Affidavit 1 at 9; Supplemental Opposition at 1).  She also swears that Barbara Ankersmit, Qmark division's President, treated her in a hostile and racist manner. (Supplemental Opposition CSF, Ex. 3 (Affidavit 3)).  Plaintiff asserts that while she was no longer assigned to work after June 5, 2004, she returned to Starr Seigle's office on the next payday and on July 13, 2004.  At these times she observed other co-workers actively employed.  (Opposition, Affidavit 1 at 6-9).  Furthermore, Plaintiff observed Defendant's advertisements seeking market research telephone interviewers in multiple local papers during the month of July, the same time period when Defendant failed to assign her to work.  (Opposition, Ex. 5 at 1, 2).  Based on this evidence, Plaintiff asserts that she was discriminated against because of her color and race when she was not assigned to work and terminated while others were actively

23

employed.

While Plaintiff states that her co-workers were primarily non-black, she presents no specific evidence regarding the race or color of the other employees.  Plaintiff does not indicate whether non-black employees had the same limited work schedule as Plaintiff or whether non-black employees with the same schedule continued to receive assignments.  Without evidence of this type, the Court cannot compare the treatment of similarly-situated non-black employees to Plaintiff.

(b). Gender

Plaintiff states that a large percentage of the telephone interviewers were transgender or transvestites. (Opposition, Affidavit 1 at 7).  Plaintiff offers no evidence or statistics about the gender of her fellow employees.  Defendant provides evidence that almost 75% of Starr Seigle's employees in 2004 were women.  (Motion for Summary Judgment CSF 5).  The Court also notes that the majority of the names listed on the employee list and Interviewer Productivity records appear to be female. (See Supplemental Opposition CSF, Ex. 4; Motion for Summary Judgment CSF, Ex. 1).  Plaintiff only provides one discrete example of allegedly disparate treatment.  On her first day of work, one of her supervisors, Taryn Goto, allegedly yelled at Plaintiff and gripped her shoulder with intense pressure for speaking loudly on the phone.  (Opposition, Affidavit 1 at 3).

24

She contends this was a discriminatory act because a male co-worker spoke loudly on another occasion and was never reprimanded.  (Opposition, Affidavit 1 at 5).  While this incident may support Plaintiff's contention that she was treated differently than a man on one occasion, no connection has been established between the incident and Plaintiff's termination. Again, without further evidence regarding the sex of other employees, the Court has little basis to make a determination about disparate treatment termination on gender grounds.

(c). <u>Work Schedule</u>

Finally, the record is limited regarding evidence of the work schedules and availability of Plaintiff's fellow telephone interviewers.  Defendant claims that there were sixty-seven callers available in June 2004, and Plaintiff was one of only five that was only available to work twenty hours a week. (Motion for Summary Judgment CSF ¶ 9).  In July 2004, she was the only caller of thirty-six to be available on such a limited basis.  (Motion for Summary Judgment CSF ¶ 9).  Defendant also states that it only had projects sufficient to employ thirty-one of the available sixty-seven telephone interviewers in June. (Motion for Summary Judgment CSF ¶ 14).  There is no evidence before the Court regarding the assignments given to the Plaintiff's co-workers with a similarly limited schedule. Plaintiff claims that she observed her co-workers actively

employed when she visited the office on June 5, 2004 and July 13,
2004.  However, there is no evidence regarding the work schedules
of those actively employed co-workers, so the Court is unable to
determine whether Plaintiff was similarly-situated to them.

In Plaintiff's Supplemental Opposition she argues that
her availability was not limited to twenty hours a week.  (See
Supplemental Opposition CSF, Ex. 1 (Preliminary Interview form
indicating that Plaintiff was available to work from 9-5 Monday
through Saturday)).  However, Plaintiff has already admitted that
she was allowed to select her work schedule and chose Monday,
Wednesday, and Friday from 1-5, and Saturday from 9-5.
(Complaint at 3; Opposition, Affidavit 1 at 2).  She also
admitted that she was instructed to carefully select her
available hours, because her selections would become her official
schedule.  (Opposition, Affidavit 1 at 2).  Defendant states that
callers may change their schedule at any time, but must notify
their supervisors if they intend to do so.  (Motion for Summary
Judgment CSF, Nakasone Declaration ¶ 3).

In her Supplemental Opposition, Plaintiff alleges for
the first time that Defendant ignored her requests to be
reassigned pursuant to her general availability as opposed to her
official work schedule.[7]  (Supplemental Opposition at 2).  At the

---

[7]  At orientation, a Preliminary Interview form was created
for Plaintiff that indicates she was available to work Monday

**(Cont.)**

June 26, 2006 hearing, Plaintiff claimed that Defendant knew she
was available beyond the range of her official work schedule, and
Defendant should have called her when they needed additional
workers.  As Defendant notes, Plaintiff never previously claimed
that she notified Starr Seigle that she suddenly wanted to expand
her official work schedule.  Additionally, Plaintiff previously
acknowledged that she needed a structured schedule, not an on-
call arrangement.  (Opposition at 1).  For Plaintiff to now
allege that she requested an expanded work schedule would be
contradictory to her previous assertions, and is not to be
considered by this Court.  See Cline v. The Industrial
Maintenance Engineering & Contracting Co., 200 F.3d 1223, 1232
(9th Cir. 2000) (citing Russell v. Rolfs, 893 F.2d 1033, 1037
(9th Cir. 1990)).  Finally, Defendant was not struggling to fill
interviewer slots, but rather, did not have enough work for the
telephone callers it employed.

 After reviewing Plaintiff's affidavits and supporting
evidence, the Court concludes that Plaintiff has failed to meet
the minimal burden of establishing that she was treated
differently than other similarly-situated employees from outside
her protected class.  The record is devoid of evidence of non-

---

through Saturday from 9-5.  (Supplemental Opposition CSF, Ex. 1).
While she may have initially informed Defendant that she was
available to work such a broad schedule, Plaintiff subsequently
chose to limit her work hours to Monday, Wednesday, and Friday
from 1-5, and Saturday from 9-5.

black or male employees receiving assignments when she did not.
The record does not contain any evidence about the assignments
given to other limited schedule employees.  Therefore, the Court
finds that Plaintiff has failed to establish a prima facie case
of employment discrimination under Title VII.  The Court GRANTS
Defendant's Motion for Summary Judgment on her race, color, and
gender discrimination claims.  Additionally, even if the Court
were to find Plaintiff established a prima facie case, the Court
notes that Plaintiff has also failed to rebut Defendant's non-
discriminatory rationale for its employment decision.

     b.   <u>Defendant Articulates Non-Discriminatory Explanation</u>

       Had Plaintiff established a prima facie case of
disparate treatment based on race, color, or gender, the burden
would shift to Defendant to articulate a legitimate, non-
discriminatory reason for her alleged dismissal.  Defendant
responds to Plaintiff's claims by alleging that Plaintiff was a
part-time, on-call employee whose available schedule did not
match the needs of the company.  Plaintiff signed a Work Schedule
Policy on the date of her hiring acknowledging that "work is
available on a project-to-project basis. . . ."  (Motion for
Summary Judgment CSF, Ex. 3).  Plaintiff also acknowledged that
she was an at-will employee who was part-time and on-call.  <u>Id.</u>
Defendant claims that it followed this Policy in assigning
Plaintiff's work schedule.  Defendant also states that

Plaintiff's work schedule placed her in a small minority of
workers that were available on a limited basis.

Defendant claims that six projects required staffing
during June 2004 and July 2004. (Motion for Summary Judgment CSF
¶ 12). Each project required that the telephone interviewer
either work full-time during the week or at night. <u>Id.</u> For
example, the 2004 Resident Attitude Survey, running from June 9,
2004 through June 19, 2004, only operated during the evening and
weekend. <u>Id.</u> Plaintiff's alternating afternoon and Saturday
work schedule did not match the needs for the project, or any of
the other five projects. Defendant explains that "for
consistency, client service, and cost efficiency, Starr assigns
the fewest number of callers as possible to each project."
(Motion for Summary Judgment CSF ¶ 3). Therefore, as long as
Defendant has callers that worked both nights and weekends, those
callers were assigned to the 2004 Resident Attitude Survey before
Plaintiff.

Defendant also claims the July 2004 newspaper
advertisements were published to find telephone interviewers for
August 2004 projects. In fact, not one person hired as a result
of the June and July advertisements were scheduled to work as of
August 17, 2004. (Motion for Summary Judgment CSF, Ankersmit
Declaration ¶ 15). The Court concludes that Defendant, while
disputing that Plaintiff was actually fired, has articulated a

29

non-discriminatory basis for not assigning her to work after June 5, 2004.

c.   Plaintiff's Rebuttal Evidence is Insufficient

Under the McDonnell Douglas framework, the burden would then shift back to Plaintiff to offer direct or circumstantial evidence "that a discriminatory reason more likely motivated the employer" to engage in disparate treatment, Cornwell, 439 F.3d at 1028, or to offer evidence that the "employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. Plaintiff has simply not met this burden.  As stated at the outset of the discussion, Plaintiff does not offer sufficient direct or circumstantial evidence of a discriminatory motive. See discussion supra Part II.A.1.  Thus, she can only survive summary judgment now by presenting direct or circumstantial evidence to show that Defendant's explanation is not credible. Cornwell, 439 F.3d at 1029; Mondero v. Salt River Project, 400 F.3d 1207, 1213 (9th Cir. 2005); Bradley v. Harcourt, Brace and Co.,104 F.3d 267, 270 (9th Cir. 1996) (citing Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994)).

Plaintiff offers two arguments that Defendant's explanation for her alleged termination is pretext.  First, she asserts that Defendant knew she was available to work well beyond her official schedule because she originally reported a much broader availability.  (Supplemental Opposition at 1).  However,

as discussed, despite Plaintiff's requests to work, there is no evidence that she ever indicated to Defendant that she wished to expand her official schedule.  To the contrary, she originally stated to the Court that she needed a stable schedule. (Opposition at 1).

Second, Plaintiff refutes that it was not cost-effective to hire her for projects in June and July. (Supplemental Opposition at 2).  Part of Defendant's explanation for not assigning Plaintiff in June and July is that it saves the company money when it uses as few callers as possible for each project.  For example, training ten individuals, who can make the calls on a full-time basis, is cheaper than training twenty people to make those calls part-time.  Plaintiff presents no evidence, other than mere assertions, to show that Defendant's explanation is untrue.

The Court concludes that Plaintiff has failed to rebut Defendant's non-discriminatory rationale for its employment decisions.  Accordingly, even if Plaintiff had been able to establish a prima facie case under Title VII, the Court would ultimately grant Defendant's Motion for Summary Judgment on her race, color, and gender discrimination claims.

B.  ADA Claim

Defendant also requests the Court grant summary judgment in its favor on Plaintiff's claim of discrimination

based on disability.  Plaintiff originally listed disability discrimination in her original EEOC charge and Complaint. Disability discrimination claims should be brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12112(a), not Title VII.  Plaintiff does not refer to the ADA in her Complaint. In the May 31 Order, the Court outlined the elements of an ADA claim and ordered Plaintiff to provide additional facts regarding her disability claim.  (May 31 Order at 30-33).  Plaintiff again makes no mention of disability discrimination in her Amended Complaint or Supplemental Opposition.

At the June 26, 2006 hearing, Plaintiff informed the Court that she was dropping her disability discrimination claim. She also indicated that she did not inform Defendant about her disability during her course of employment.  Furthermore, the only accommodation that she requested was the use of an elevator during her weekend shifts.  For all of these reasons, the Court GRANTS Defendant's Motion for Summary Judgment on this claim.

<u>**CONCLUSION**</u>

For the foregoing reasons the Court 1) GRANTS Defendant's Motion for Partial Judgment on the Pleadings, and 2) GRANTS Defendant's Motion for Summary Judgment.  The Court finds that Plaintiff did not provide a factual or legal basis for her employment discrimination claims based on marital status, sexual orientation, or disability.  The Court also concludes that

32

Plaintiff failed to establish a prima facie case for discrimination based on her race, color, or gender pursuant to Title VII.  Additionally, even if the Court were to find that Plaintiff established a prima facie case, Defendant articulated a non-discriminatory explanation for its employment decisions that Plaintiff failed to prove were unworthy of credence.  As this Order disposes of all outstanding matters in this case, the clerk of the court is ordered to enter judgment in favor of Defendant and close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 29, 2006.



_____
Alan C. Kay
Sr. United States District Judge

RUTENSCHROER V. STARR SEIGLE COMMUNICATIONS, INC. DBA QMARK, CIV. NO. 05-00364 ACK/BMK, ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.